# In the United States Court of Federal Claims

No. 11-772C
(Filed: February 23, 2015)

```
* * * * * * * * * * * * * * * * *
                                  *
DANIEL S. SOKOL,                  *    Military Pay Act, 37 U.S.C. § 204;
                                  *    Physical Evaluation Board; Board
              Plaintiff,          *    for the Correction of Naval Records;
                                  *    Arbitrary and Capricious Standard;
      v.                          *    Fitness for Naval Service;
                                  *    SECNAVINST 1850.4E § 3405;
THE UNITED STATES OF AMERICA,     *    10 U.S.C. § 1201; 32 C.F.R. §§
                                  *    723.2, 723.6; 5 U.S.C. § 552a;
              Defendant.          *    Credibility Determinations
                                  *
* * * * * * * * * * * * * * * * *
```

*Jason Ellis Perry*, Law Office of Jason Perry LLC, Wellington, FL, for plaintiff.

*Matthew Paul Roche*, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington D.C., for defendant. With him were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirshman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, and *Lt. Matthew R. Roush*, General Litigation (Code 14), United States Department of the Navy.

**OPINION AND ORDER**

**KAPLAN, Judge.**

      Plaintiff Daniel Sokol is a former member of the United States Navy ("Navy"). He has filed this action under the Military Pay Act, 37 U.S.C. § 204 (2012), alleging that he was wrongfully discharged without referral to the Physical Evaluation Board ("PEB") for certain allegedly disabling conditions, specifically headaches, back pain, and a knee injury. He further argues that he qualified for, but was denied, disability retirement under 10 U.S.C. § 1201 (2012) with a minimum rating of fifty percent. He seeks "payment of all wrongfully denied pay and allowances due to him under the law"; "all out of pocket expenses for medical care incurred since his removal from active duty"; "[r]estoration to active duty until such time as Plaintiff's physical disability case is finally decided by the Secretary of the Navy"; "costs and attorney's fees"; and "such other relief as the Court deems just and proper." Am. Compl. at 7-8, ECF No. 23.

On December 20, 2011, Judge Damich, to whom this case was initially assigned, remanded Mr. Sokol's case to the Board for Correction of Naval Records ("BCNR"). Order, Dec. 20, 2011, ECF No. 13. The BCNR denied relief on April 1, 2013. Joint Status Report at 1, April 30, 2013, ECF No. 19. Thereafter, the parties filed cross-motions for judgment on the administrative record. This Court now **GRANTS** the government's motion and **DENIES** Mr. Sokol's motion, for the reasons set forth below.

## BACKGROUND

Mr. Sokol enlisted in the Navy on August 14, 2000 and served on active duty from 2001 to 2005. See Corrected Admin. R. ("CAR") 123, 152. For a portion of that time, he served as a Gunner's Mate aboard the USS Donald Cook (DDG-75), a guided missile destroyer with a home port of Norfolk, Virginia. CAR 171; Am. Compl. ¶ 6. After about two years of service, Mr. Sokol was promoted to the rank of Petty Officer, Third-Class on June 16, 2003. Am. Compl. ¶ 6; Def.'s Cross-Mot. for J. on Admin. R. 2, ECF No. 38 ("Def.'s Mot.").

Earlier in his enlistment, in November 2001, Mr. Sokol began complaining of chronic headaches. CAR 354-55. Although the doctors' notes documenting these complaints are practically illegible, it appears that because Mr. Sokol also complained of sinus symptoms, he was diagnosed with a sinus infection and prescribed an antibiotic, which made him "feel[] much better." CAR 45, 352-56.

On November 29, 2004, Mr. Sokol went to the emergency room at the Naval Medical Center Portsmouth, reporting that his right knee "gave out on him" and was causing him significant pain. CAR 60. The next day he saw another physician, Dr. Jennifer Reed, at the Naval Station Norfolk Sports Medicine Clinic. CAR 48. Mr. Sokol explained to Dr. Reed that several weeks earlier, he had experienced a "direct blow" to his right quadriceps "just above [the] patella." CAR 48. More specifically, Mr. Sokol alleges in his complaint that,

> On November 4, 2004, [he] went to replace an empty nitrogen bottle, located on the lower deck of the USS Donald Cook, with a full nitrogen bottle. The nitrogen bottles were contained on a bottle rack, and during the change-out procedure, Mr. Sokol's right knee became lodged between the full nitrogen bottle and the bottle rack. As Mr. Sokol proceeded to the ship's surface deck, his right knee hit the sharp edge of a scuttle (the opening in a ship's deck).

Am. Compl. ¶ 7. He explained to Dr. Reed that, although the pain from this injury had gradually improved, he experienced an acute increase in pain on November 29 while attempting an exercise run. CAR 48. Dr. Reed placed Mr. Sokol on light duty for three weeks, instructing him "no ladders," and placed him on Sick-In-Quarters[1] ("SIQ") status for seventy-two hours. CAR

---

[1] Sick-In-Quarters is a status in which the military member is relieved of all military duties with the expectation that the member will be in his or her residence recuperating until the expiration of the SIQ status. Manual of the Medical Department, NAVMED P-117, Article 18-2(2) (2005) [hereinafter NAVMED P-117].

48; Am. Compl. ¶ 9.  Dr. Reed also prescribed physical therapy with an athletic trainer.  CAR 48-49.  On December 10, 2004, Dr. Reed diagnosed "quad/patellar tendonitis" and ordered an MRI, the results of which were normal.  See CAR 49-50, 52-53.  She also placed him on light duty for an additional thirty days, stating, "if I am unable to get him back to shipboard activity [during] this 30 day period, I will place him [on] LIMDU [limited duty status]."[2]  CAR 49.

On January 10, 2005, a medical board placed Mr. Sokol on LIMDU for eight months.  CAR 52-53, 61.  Accordingly, he was transferred to a Transient Personnel Unit ("TPU") in Norfolk, Virginia, where he reported on January 19, 2005.  CAR 61-62.  On February 25, 2005, he was transferred to the Mid-Atlantic Regional Maintenance Center onboard Naval Station Norfolk.  CAR 64, 171.  Five months later, on July 27, 2005, he was cleared for return to medically unrestricted duty, effective on September 10, 2005, although Captain Robert Quigg of the Orthopedic Department recommended "not sea duty suitable" and "no running/no jumping/no impact activity."  CAR 802.  Despite having been cleared for medically unrestricted duty, Mr. Sokol continued to complain of knee pain, according to records of an ER visit on September 17, 2005 and a follow-up visit on September 29, 2005.  CAR 210-13.

On October 19, 2005, Mr. Sokol had a headache, vertigo, and an episode of unconsciousness, and he underwent a spinal tap to rule out meningitis.  CAR 30, 288.  After that procedure, on October 25, 2005, he reported to the emergency room with complaints of lower back pain.  CAR 289-91.  He was examined, prescribed Vicodin, and discharged.  CAR 287.  He continued to complain of back pain during visits to the ER on November 2 and to the primary care clinic on November 4, 2005.  CAR 284-85.  Records from those visits note that a CT scan of his back had been taken to rule out an epidural abscess, and the results were normal.  Id.

Mr. Sokol was honorably discharged from active duty on November 16, 2005 based on completion of required service.  CAR at 152.  In connection with his discharge, he underwent a final medical examination, in which the examiner noted his knee injury as well as his complaints of "constant back pain," severe headaches, and "TMJ disorder," but concluded that Mr. Sokol was "in good health."  CAR 273-77.

Later, following his separation, Mr. Sokol filed a disability claim with the Department of Veterans Affairs ("VA").  CAR 703.  In connection with his VA disability claim, he underwent various medical examinations by VA doctors.  See CAR 715-32.  During his orthopedic/musculoskeletal exam, he told his doctor about his post-spinal-tap pain and alleged that he had since experienced chronic low back discomfort.  CAR 725.  In addition, when examined by a neurologist, Mr. Sokol gave a history that in November 2001, he hit the back of

---

[2] LIMDU is a period when the member reports to his work space, but during the period the member is excused from performance of certain aspects of military duties as defined in his individual LIMDU write-up.  LIMDU may only be provided to a patient as the result of the actions of a Medical Evaluation Board.  NAVMED P-117, Article 18-2(5).  Navy regulations require that periods of LIMDU "shall not exceed 16 months, per career, cumulative."  SECNAVINST 1850.4E § 1008.  They further provide that, upon completion of the authorized LIMDU, the member either returns to duty or is referred to the PEB.  Id.

his head on a desk, causing him to lose consciousness for fifteen to twenty minutes. CAR 731. Since that injury, he stated, he began experiencing frequent headaches. Id. He also reported that in October 2003, he hit his head on a pipe and that after this incident, his headaches increased in intensity. Id. The doctor diagnosed him with post-traumatic headaches. CAR 732.

On March 17, 2006, the VA issued a decision awarding Mr. Sokol disability ratings of ten percent for post-traumatic headaches, ten percent for lumbar strain, and ten percent for his knee injury. CAR 703. On August 30, 2007, the VA increased the rating for his back injury to twenty percent, and on October 16, 2007, the VA increased the rating for his headaches to thirty percent and added ratings for seborrheic dermatitis and tinnitus, both at ten percent. Id. 70-71, 635.

Mr. Sokol filed this lawsuit on November 15, 2011, some six years after his discharge. Shortly thereafter, the Court granted the parties' joint motion for remand to the BCNR. Order, Dec. 20, 2011, ECF No. 13. In his memorandum accompanying his application to the BCNR, Mr. Sokol argued that under Navy regulations, his knee injury, as well as his headaches and back pain, required referral to the PEB. CAR 31. As relief, he "request[ed] that his records be corrected to show that he was not separated and that he be referred to a PEB for adjudication or, in the alternative, that he was permanently retired from the U.S. Navy due to physical disability rated at least 50% compensable." CAR 28.

The BCNR sought an advisory opinion from the Secretary of the Navy's Council of Review Boards ("CORB"). On January 8, 2013, the CORB issued its opinion, recommending "a partial grant of relief"—a disability rating of ten percent for patellofemoral pain syndrome with respect to Mr. Sokol's knee. CAR 8. The CORB reasoned that Mr. Sokol's knee injury warranted a disability rating because it caused a need for duty limitations "for almost two years prior to his separation." Id. The CORB recommended denying relief with respect to Mr. Sokol's headaches and back pain, on the other hand, because his pre-separation medical records do not suggest that these conditions rendered him unfit for naval service. CAR 9-11. On March 22, 2013, Mr. Sokol submitted a response to this advisory opinion, contesting the CORB's determinations regarding his headaches and back pain. Pl.'s Mot. for J. on AR Ex. 1, ECF No. 25.

On April 1, 2013, the Acting Executive Director of the BCNR issued a memorandum opinion on behalf of a panel of three members, each of whom voted to deny all relief to Mr. Sokol. CAR 1-2. The BCNR found that Mr. Sokol's allegations with respect to his head injury and back pain were unsubstantiated. CAR 3-4. With respect to Mr. Sokol's knee, the BCNR disagreed with the CORB's recommendation largely because, after completing about six months of limited duty, a medical board found Mr. Sokol fit for return to full duty. CAR 4-5. The BCNR also based its denial of relief for Mr. Sokol's knee injury on its judgment that Mr. Sokol lacked credibility. CAR at 3-6. It dismissed the medical records referring to his knee pain as "based on [Mr. Sokol's] representations, which are not reliable." CAR 4. For instance, in addressing records of a January 11, 2006 VA medical exam noting that Mr. Sokol exhibited an antalgic gait, CAR 725, the BCNR gave them no credence, stating that "[a]n antalgic gait is easily feigned, as are subjectively painful motion and motion limited by pain." CAR 6.

4

After receiving this denial, Mr. Sokol filed an amended complaint, and proceedings resumed in this Court, where the parties filed cross-motions for judgment on the administrative record.  On November 25, 2013, Mr. Sokol's case was transferred to the undersigned.  On July 25, 2014, this Court ordered supplemental briefs to address a notation in Mr. Sokol's medical record that, as of September 29, 2005, Mr. Sokol was "undergoing [an] MEB process/review."  Order for Supplemental Brs., ECF No. 49 (citing CAR 210).

The Court scheduled oral argument on the cross-motions for judgment on the administrative record for February 3, 2015.  Counsel for Mr. Sokol failed to either appear at the hearing or notify the Court in advance that he would not be able to appear.  Consequently, at the oral argument, the Court heard argument only from counsel for the government.

## DISCUSSION

### I. Jurisdiction

Jurisdiction over Mr. Sokol's claim arises from the Tucker Act, 28 U.S.C. § 1491(a)(1) (2012) and the Military Pay Act, 37 U.S.C. § 204.  See Antonellis v. United States, 723 F.3d 1328, 1331 (Fed. Cir. 2013).  The Tucker Act confers jurisdiction on this court and waives sovereign immunity, see Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir. 2007); the Military Pay Act constitutes the requisite money-mandating authority, see Dysart v. United States, 369 F.3d 1303, 1315 (Fed. Cir. 2004).  Specifically, the Military Pay Act entitles a military member who was wrongfully separated from service to the pay that he would have received but for the unlawful action.  Roth v. United States, 378 F.3d 1371, 1384 (Fed. Cir. 2004).  In addition, as explained by the Federal Circuit,

> although the Court of Federal Claims does not possess general equity jurisdiction, under the Tucker Act, in actions for monetary relief, '[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records . . . .

Id. (quoting 28 U.S.C. § 1491(a)(2)).

### II. Standard of Review

RCFC 52.1, which governs motions for judgment on the administrative record, "provide[s] for trial on a paper record, allowing fact-finding by the trial court."  Bannum, Inc. v. United States, 404 F.3d 1346, 1356 (Fed. Cir. 2005).[3]  Therefore, the standard of review for a motion for judgment on the administrative record differs from that for a motion for summary judgment.  Id. at 1354-55.  Unlike summary judgment, for instance, "a genuine dispute of

---

[3] RCFC 52.1 "replaces an earlier rule, RCFC 56.1."  RCFC 52.1 Rules Committee Note (2006).  Bannum, 404 F.3d at 1354-56, refers to RCFC 56.1, but its analysis of the rule applies equally to RCFC 52.1.

material fact does not preclude a judgment on the administrative record." Sierra Nev. Corp. v. United States, 107 Fed. Cl. 735, 751 (2012). To the contrary, "[t]o review a motion or cross-motions under RCFC 52.1(c), the court asks whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 630 (2014). When challenging the decision of a military corrections board, the plaintiff's burden is to show, by "cogent and clearly convincing evidence," Wronke v. Marsh, 787 F.2d 1569, 1576 (Fed. Cir. 1986), that the agency's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." Metz v. United States, 466 F.3d 991, 998 (Fed. Cir. 2006) (quoting Porter v. United States, 163 F.3d 1304, 1312 (Fed. Cir. 1998)). See also Wade v. United States, 70 F.3d 1290, 1290 (Fed. Cir. 1995) (unpublished); Young v. United States, 497 Fed. App'x 53, 59 (Fed. Cir. Dec. 11, 2012).

The BCNR's authority arises from 10 U.S.C. § 1552 (2012) and 32 C.F.R. § 723.3, and its decisions are entitled to deference. Peoples v. United States, 87 Fed. Cl. 553, 569 (2009) (citing Bray v. United States, 515 F.3d 1383, 1391 (Ct. Cl. 1975)). In reviewing a BCNR decision, therefore, this Court does not serve as a "super correction board," Van Cleave v. United States, 70 Fed. Cl. 674, 678 (2006) (quoting Skinner v. United States, 594 F.3d 824, 830 (Ct. Cl. 1979)), and it may not substitute its judgment for that of the BCNR when "reasonable minds could reach differing conclusions on the same evidence." Verbeck v. United States, 111 Fed. Cl. 744, 750 (2013) (quoting Heisig v. United States, 719 F.2d 1152, 1156 (Fed. Cir. 1983)). The Court may, however, "decide whether the [BCNR] has complied with procedures set forth in its own regulations because those procedures by their nature limit the military's discretion." Fisher v. United States, 402 F.3d 1167, 1177 (Fed. Cir. 2005). Moreover, the Court reviews the BCNR's decision to determine whether it is supported by substantial evidence. See Heisig, 719 F.2d at 1157. The BCNR is not required to explain the reasons for its decision "in great detail." Peoples, 87 Fed. Cl. at 576 (quoting Craft v. United States, 544 F.2d 468, 474 (Ct. Cl. 1976)). "In assessing the sufficiency of the [BCNR's] rationale for [its] decision, the court[] . . . will uphold a decision of less than ideal clarity if the [BCNR's] path may reasonably be discerned . . . ." Peoples, 87 Fed. Cl. at 578 (quoting Dzialo v. United States, 5 Cl. Ct. 554, 563 (1984)).

Mr. Sokol argues that the BCNR's decision in his case cannot survive this standard of review, both because the BCNR's conclusion was unreasonable and because it failed to comply with applicable procedures. As explained in the following analysis, Mr. Sokol's arguments are unpersuasive.

**III.    Mr. Sokol's Claims that the BCNR's Conclusion Was Unreasonable**

The heart of Mr. Sokol's complaint is that he should have been referred to the PEB and should have received disability ratings for his knee injury, headaches, and back pain and that the BCNR's decision to the contrary was arbitrary and capricious. Considering the deferential standard of review applicable to military decisions, however, the BCNR's conclusion that Mr. Sokol's ailments justified neither a PEB nor a disability rating must be upheld.

### A. Standards for PEB Referral and Disability Benefits

Secretary of the Navy Instruction (SECNAVINST) 1850.4E § 3201(a) sets forth the criteria for referral to the PEB for active duty members:

> As a general rule, an active duty member or a reservist on extended active duty will be referred for disability evaluation only by a medical board that has found the member's fitness for continued naval service questionable by reason of physical or mental impairment. A determination of questionable fitness must be supported by objective medical data displaying the nature and degree of the impairment.

To clarify this somewhat broadly written rule, SECNAVINST 1850.4E § 3202 lists circumstances <u>not</u> justifying referral to the PEB. Such circumstances include lack of motivation for performance of duty, a service member's request for referral to the PEB, the mere presence of a disease or injury without material interference with the member's ability to perform his duties, an inability to meet initial enlistment or appointment standards, physical disqualification for special duties, an inability to meet physical standards for a specific assignment such as sea duty, and processing for separation or retirement for reasons other than physical disability. SECNAVINST 1850.4E § 3202.

Once a member is referred to the PEB, standards set forth in Enclosure 3, Part 3 of SECNAVINST 1850.4E govern determinations of unfitness, which in turn constitutes "[t]he sole standard to be used in making determinations of physical disability as a basis for retirement or separation." § 3301. In general, "[e]ach case is considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank or rating." <u>Id.</u> The relevant criteria in assessing a member's fitness include, for example, whether the "[m]edical condition represents a decided medical risk to the health of the member or to the welfare of other members were the member to continue on active duty," and whether it "imposes unreasonable requirements on the military to maintain or protect the member." § 3302(b)(1)-(2). "A member may be determined Unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the member to be . . . found Unfit because of physical disability." § 3304(d).

"Once unfitness has been determined, the PEB [determines] if the member is statutorily eligible to receive disability benefits before rating an individual." § 3405(b). Chapter 61 of title 10 of the United States Code requires, for instance, "that the disability is: (a) of a permanent nature or such a degree to preclude return to military duty within a reasonable period of time, and (b) not the result of intentional misconduct or willful neglect and was not incurred during a period of unauthorized absence." SECNAVINST 1850.4E § 3405. <u>See also</u> 10 U.S.C. §§ 1201, 1203. Disability retirement is warranted under section 1201 if, in addition to requirements (a) and (b), either the member has at least twenty years of service or the disability was at least thirty percent under the VA standard and was incurred while on active duty. § 1201(b)(3). Separation and severance pay, on the other hand, are warranted under section 1203 if, in addition to

requirements (a) and (b), the member has less than twenty years of service and either of the following is true: the disability is less than thirty percent and was incurred in the line of duty; or the disability is at least thirty percent and was not incurred in the line of duty, and the member has less than eight years of service on the date when he would otherwise be retired under section 1201. § 1203(b).

### B. Application of Standards to Mr. Sokol's Case

Given the standards above, to find that Mr. Sokol was wrongly denied a PEB, the Court would have to conclude at the very least that, at some time before his separation from the Navy, each of his injuries was supported by "objective medical data" and that those injuries, either standing alone or in combination, called into question his ability to perform the duties of his office, grade, rank or rating. In particular, the Court would have to conclude that the BCNR's finding to the contrary was arbitrary and capricious. This is an extremely difficult hurdle that the Court concludes has not been overcome in this case.

Regarding Mr. Sokol's claim of post-traumatic headaches, as the BCNR noted, his medical record contains very little evidence that such headaches affected his ability to perform his duties. CAR 3. In support of his claim, Mr. Sokol has identified only (1) the records from a mental health assessment and a mental health follow-up in November 2001, which note that he "hit [his] head" but that he "fe[lt] much better," CAR 45-46; (2) notes from doctors' appointments in November 2001, which suggest that his headaches were related to a sinus infection, CAR 352-55; and (3) records from a post-separation compensation and pension exam by a VA doctor, which recount his history of head injuries but note that his headaches "were not debilitating," CAR 86.

The evidence upon which Mr. Sokol relies differs markedly from the evidence that has led courts to reverse denials of relief by the BCNR. For example, the court in Van Cleave v. United States found that the BCNR's decision denying a Navy plaintiff a thirty percent disability rating for his headaches was arbitrary and capricious based on thorough documentation of his headaches' impairment of his ability to perform his duties. 66 Fed. Cl. 133, 138 (2005). Specifically, records from various medical exams noted that the plaintiff in Van Cleave was "unable to perform his duties deployed at sea because of his headaches" and "unable to continue working effectively" because of a need to "lie down in a dark room and allow the headache to take its course." Id. In contrast, the records that Mr. Sokol cites are ambiguous as to the frequency, severity, and degree to which his headaches impaired his ability to perform his duties.

The evidence that Mr. Sokol identifies in support of his claim of back pain similarly lacks the "cogent and clearly convincing" quality necessary to find that the BCNR's conclusion was arbitrary and capricious. Wronke, 787 F.3d at 1576. The medical records contemporaneous to Mr. Sokol's complaints indicate that he did experience acute pain—indeed, enough to require a prescription for Vicodin. CAR 287. The records, however, do not indicate that Mr. Sokol's doctors believed or should have suspected that his back pain constituted anything more serious than a temporary effect from his spinal tap procedure. Especially considering that objective testing for an abscess and other abnormalities was negative, CAR 284-85, the evidence

documenting Mr. Sokol's back pain simply does not rise to the level that would allow the Court to reverse the BCNR's decision as arbitrary and capricious.

Mr. Sokol's knee injury warrants more discussion. In contrast to his headaches and back pain, Mr. Sokol's knee pain has significant documentation in the record, starting with his ER visit on November 29, 2004. CAR 60. Medical records from December 2004 and from January, March, and April 2005 demonstrate that his knee pain persisted, and his naval records show that his doctors and superiors placed him on SIQ status, light duty, and eventually LIMDU for a period of eight months. CAR 295-98, 300-15, 802-817. Moreover, after being taken off LIMDU, Mr. Sokol re-aggravated his knee injury, and his doctor recommended pain management and "possible patella surgery if no other option." CAR 212-13. Likely because Mr. Sokol was nearing his separation date, his doctor also "recommend[ed] continued care/f[ollow] up at [the] VA for this condition/issue." CAR 212. Later, the VA attributed his knee condition a ten percent disability rating, CAR 638, as did the CORB in its advisory opinion to the BCNR. CAR 8.

Nevertheless, the BCNR concluded that Mr. Sokol's knee injury did not render him unfit for naval service, and the Court cannot say that this conclusion was arbitrary and capricious. The BCNR relied largely upon the finding in July 2005 that Mr. Sokol was fit to be returned from LIMDU to medically unrestricted duty. CAR 4-5. Further, there is additional evidence in the record that supports the BCNR's conclusion. Specifically, in his pre-separation medical examination, although the examining physician acknowledged that Mr. Sokol suffered a knee injury and had been "sent to pain management," the physician ultimately found that Mr. Sokol was "in good health." CAR 277. Particularly under the deferential standard that the Court must apply here, the Court cannot find that the BCNR acted arbitrarily and capriciously in accepting the opinions of medical professionals that Mr. Sokol was fit for duty in July 2005 and just prior to his separation in November 2005.

### IV.   Mr. Sokol's Claims that the BCNR Committed Procedural Errors

Mr. Sokol contends that the BCNR committed the following list of procedural errors, which he says render its decision arbitrary and capricious: it did not make written findings, conclusions, and recommendations, as required by 32 C.F.R. § 723.6, Pl.'s Am. Mot. for J. on AR 6; it did not fully consider Mr. Sokol's response to the advisory opinion, id.; it violated 32 C.F.R. § 723.2, the Privacy Act, 5 U.S.C. § 552a (2012), and the Health Insurance Portability and Accountability Act (HIPAA), Pub. L. 104-191, 110 Stat. 1936 (1996), by requesting and receiving Mr. Sokol's medical records from the VA, Pl.'s Am. Mot. for J. on AR 7; and, finally, it based its decision on erroneous credibility determinations, id. at 28. None of these allegations has merit.

#### A. Allegation that the BCNR's Written Opinion Was Inadequate

With respect to the first alleged error, Mr. Sokol refers to the following provision: Following a hearing, or where the Board determines to recommend that the record be corrected without a hearing, the Board will make written findings, conclusions and recommendations. If denial of relief is recommended following a hearing,

such written findings and conclusions will include a statement of the grounds for denial as described in § 723.3(e)(4). The name and final vote of each Board member will be recorded. A majority vote of the members present on any matter before the Board will constitute the action of the Board and shall be so recorded.

32 C.F.R. § 723.6(a)(3). This provision, however, applies only to BCNR decisions "following a hearing" or "recommend[ing] that the record be corrected without a hearing." Id. By contrast, in Mr. Sokol's case, the BCNR denied his application in executive session, without a hearing. CAR 2. Thus, a different provision, section 723.3, governs. This section provides, in part, that "[t]he Board may deny an application in executive session if it determines that the evidence of record fails to demonstrate the existence of probable material error or injustice." § 723.3(e)(2). In such an instance, section 723.3 provides, the BCNR is only required to issue a "brief statement of the grounds for denial," setting forth

> the reasons for the determination that relief should not be granted, including the applicant's claims of constitutional, statutory and/or regulatory violations that were rejected, together with all the essential facts upon which the denial is based, including, if applicable, factors required by regulation to be considered for determination of the character of and reason for discharge.

§ 723.3(e)(4).

The BCNR's decision in Mr. Sokol's case met these requirements. For instance, as the primary "reason[] for the determination that relief should not be granted," the BCNR noted that it "was not persuaded that . . . any of your three claimed disabilities, either singly or in combination with any of the other conditions, rendered [Mr. Sokol] unfit for duty on the date of your release from active duty." CAR 3-4. As "the essential facts upon which the denial [was] based," the BCNR cited Mr. Sokol's medical records and observed, for example, that medical tests and examinations performed in response to his complaints of pain yielded nothing but normal results. See CAR 3. In addition, the BCNR noted that Mr. Sokol's orthopedist explicitly found Mr. Sokol fit for medically unrestricted duty after he completed several months of limited duty, and only a finding to the contrary would have justified a referral to the PEB. CAR 4-6. Moreover, in reference to Mr. Sokol's "claims of . . . regulatory violations"—mainly his claim that the BCNR disregarded Navy "retention standards"—the BCNR cited the CORB's advisory opinion's explanation: "The Navy's Integrated Disability Evaluation System relies, primarily, on documented duty performance ability and, as such, has no official retention standards but merely provides guidance as to 'Medical Conditions and Physical Defects Which Normally Are Cause for Referral to the Physical Evaluation Board (PEB).'" CAR 6, 10. This recital of reasons, supporting facts, and responses to Mr. Sokol's arguments is more than adequate to fulfill the "brief statement of the grounds for denial" requirement under 32 C.F.R. § 723.3.

### B. Allegation that the BCNR Did Not Consider Mr. Sokol's Response Letter

Like his first claim of procedural error on the part of the BCNR, Mr. Sokol's second claim, that the BCNR did not consider his letter in response to the CORB's advisory opinion,

10

lacks merit. In fact, the BCNR referred to the response letter explicitly and noted that the letter merely "reiterated" the same "erroneous" arguments that Mr. Sokol presented in his original application. CAR 6. Although the BCNR misidentified the date of the letter as 13 March 2013, instead of 22 March 2014, the context makes clear that the BCNR was referring to Mr. Sokol's response to the CORB's advisory opinion. CAR 6. As even Mr. Sokol recognizes was a possibility, "the BCNR simply made a scrivener's error." Pl.'s Am. Mot. for J. on AR 11.

### C. Allegation that the BCNR Improperly Obtained Records from the VA

Mr. Sokol's third claim of procedural error regards the BCNR's request addressed to the VA for copies of VA rating decisions, copies of Mr. Sokol's original service record, and "[p]hotographs of all VA medical/compensation examinations, hospital summaries, other medical evaluation reports, VA statements of case, and [Board of Veterans Appeals] decisions." CAR 22. Mr. Sokol contends that the BCNR improperly obtained these records from the VA, in violation of three separate legal provisions. First, Mr. Sokol emphasizes that, under 32 C.F.R. § 723.2(b), the BCNR "is not an investigative body." Pl.'s Am. Mot. for J. on AR 7, 12 (quoting § 723.2(b)). He argues that, when the BCNR sought and obtained documents from the VA, it conducted an investigative activity, thereby exceeding the bounds of its authority under section 723.2(b). Pl.'s Am. Mot. for J. on AR 7, 12. The government responds that the BCNR, while "not an investigative body," "is also granted broad authority to 'require the applicant or military authorities to provide such further information as it may consider essential to a complete and impartial determination of the facts and issues.'" Def.'s Mot. 29 (quoting 32 C.F.R. § 723.6). "Here," the government contends, "the BCNR determined that the very limited set of materials provided by Mr. Sokol in support of his application was insufficient and, thus, acted in accordance with its regulatory authority to acquire the appropriate records necessary to accurately evaluate his application." Def.'s Mot. 29-30.

Second, Mr. Sokol argues that the BCNR's procurement of his records from the VA violated the Privacy Act. Pl.'s Am. Mot. for J. on AR 12. The government, however, counters that the BCNR's use of the records "in addressing the transition, health care, benefits, and administrative support needs of or for . . . [a] veteran[]" falls within the "routine use exception" to the Privacy Act under the VA's regulations, 94 Fed. Reg. 60,040, 60,046 (Nov. 19, 2009). Def.'s Mot. 30.

Third, Mr. Sokol argues that the BCNR's request for and receipt of Mr. Sokol's VA medical records violated HIPAA. Pl.'s Mot. for J. on AR 12. In response, the government contends that the VA entity that provided the records, the Board of Veterans Appeals, is not covered by HIPAA, and "once protected individually identifiable health information is in the hands of a non-covered entity, the regulations provide that such information is no longer subject to the provisions of the HIPAA privacy rule." Def.'s Reply 3-4, ECF No. 48 (citing Standards for Privacy of Individually Identifiable Health Information, 65 Fed. Reg. 82,462, 82,567 (Dec. 28, 2000)).

The Court is not persuaded that the BCNR's decision is vulnerable on any of these three grounds. First, as the government observes in its Cross-Motion and Response at 9, to the extent

11

that Mr. Sokol seeks redress for the alleged HIPAA and Privacy Act violations, this Court lacks jurisdiction to grant it. See 5 U.S.C. § 552a(g)(1); Parker v. United States, 280 F. App'x 957, 958 (Fed. Cir. 2008) (non-precedential), affirming 77 Fed. Cl. 279 (2007); Madison v. United States, 98 Fed. Cl. 393, 395 (2011); Agee v. United States, 72 Fed. Cl. 284, 289-90 (2006).

Moreover, to the extent that Mr. Sokol argues that the BCNR's decision is contrary to law because of its alleged reliance on illegally obtained evidence, this argument also founders. At the outset, the Court notes that Mr. Sokol has failed to explain how the BCNR's retrieval of his VA records prejudiced him or how the Court should remedy this alleged wrong. From the Court's perspective, even had the BCNR erred in retrieving records from the VA, this error would have been a harmless one. The BCNR's decision hinged primarily upon the fact that Mr. Sokol's physician found him fit for duty after his stint on limited duty and prior to his discharge—a fact that the BCNR did not need Mr. Sokol's VA records to discern, because that fact is revealed in his service records. See CAR 5. Indeed, Mr. Sokol's VA records only could have helped his case. After all, on the basis of these records, the VA concluded that Mr. Sokol was disabled at a rate of thirty percent for his headaches, twenty percent for lumbar strain, and ten percent for his knee injury. See CAR 70-77.

Furthermore, the Court rejects Mr. Sokol's argument that the BCNR committed error by seeking Mr. Sokol's VA records. A reasonable reading of 32 C.F.R. § 723.6 is that the VA, under these circumstances, constitutes one of the "military authorities" whom "the Board may require . . . to provide such further information as it may consider essential to a complete and impartial determination of the facts and issues." Even if this reading of the regulation is incorrect, had the BCNR not requested the records itself, the BCNR simply could have refused to consider Mr. Sokol's case until Mr. Sokol provided all relevant records, including those in the custody of the VA. See Carter v. United States, 466 F. App'x 2, 3-4 (D.C. Cir. 2012). Thus, Mr. Sokol's argument that the BCNR's decision was arbitrary and capricious because it was based on illegally obtained records is without merit.

### D. Allegation that the BCNR Based Its Decision on Erroneous Credibility Determinations

In his final claim of procedural error, Mr. Sokol cites a number of instances in the BCNR's opinion in which it dismisses Mr. Sokol's complaints of injury based on its judgment that Mr. Sokol lacks credibility. See CAR 7 (observing that the Board had concluded that "you lack credibility, and that your representations concerning your alleged injuries and their residual effects are exaggerated and not worthy of belief"). Indeed, the BCNR suggested that Mr. Sokol was engaging in pretense with respect to his knee injury: "An antalgic gait is easily feigned, as are subjectively painful motion and motion limited by pain." CAR 6. Mr. Sokol contends that these remarks render the BCNR's decision arbitrary and capricious and "edge[] towards bad faith." Pl.'s Am. Mot. for J. on AR 30. In response, the government argues that the BCNR's credibility determinations are supported by substantial evidence, and this Court must afford them deference. Def.'s Mot. 21 (citing Stine v. United States, 92 Fed. Cl. 776, 795-96, 797 n.33 (2010)).

The Court recognizes and agrees that "[t]he BCNR's credibility determinations are afforded the same level of deference as any of its fact-based determinations." Stine, 92 Fed. Cl. at 796. Nonetheless, at least one of the BCNR's comments regarding Mr. Sokol's credibility—suggesting that Mr. Sokol was "feign[ing]" a limp—appears to lack adequate justification. None of the several physicians who examined his knee both during his service and after he left expressed any doubt that his knee was, in fact, injured and that he was in pain. Indeed, Mr. Sokol was placed on limited duty for a number of months as a result of his knee injury, and he was prescribed both pain management and medication as recently as September 2005, shortly before he was discharged from the service. CAR 212-13. The Court is hard-pressed, therefore, to credit this particular credibility finding by the Board, which—in contrast to the examining physicians—never had the occasion to observe Mr. Sokol's gait.[4]

Nonetheless, the bottom line for the Court in this case is that, even leaving aside the BCNR's comments about Mr. Sokol's credibility, its conclusion that there was no error in the Navy's failure to refer Mr. Sokol to a PEB rests on substantial evidence—that is, Mr. Sokol's return to medically unrestricted duty in July 2005 and a finding of fitness from his pre-separation medical examination in November 2005. For that reason, and in light of the Court's deferential standard of review, the government is entitled to judgment on the administrative record.

## CONCLUSION

Based on the foregoing, Mr. Sokol's motion for judgment on the administrative record is **DENIED**, and the government's motion for judgment on the administrative record is **GRANTED**. The Clerk shall enter judgment accordingly, and each party shall bear its own costs.

**IT IS SO ORDERED.**

s/Elaine D. Kaplan
ELAINE D. KAPLAN
Judge, U.S. Court of Federal Claims

---

[4] The Court notes, however, that it was not unreasonable for the BCNR to question the credibility of at least some of Mr. Sokol's complaints based on, for instance, Mr. Sokol's failure to disclose several pre-existing health conditions in his enlistment papers. CAR 7, 350-51. It further observes that the BCNR's jaundiced view of Mr. Sokol's credibility may also find support in the barely legible notes of a November 2, 2001 examination in which the treating physician, apparently responding to Mr. Sokol's complaints of headaches, seems to have written the word "malingering" in all capital letters, followed by an exclamation point. CAR 357.